1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE H. MORAN, | ) 1:08-CV-01131 AWI JMD HC |
| | ) |
| Petitioner, | ) FINDING AND RECOMMENDATION |
| | ) REGARDING PETITION FOR WRIT OF |
| v. | ) HABEAS CORPUS |
| | ) |
| J.D. HARTLEY, | ) |
| | ) |
| Respondent. | ) |
| | ) |

Jose Moran ("Petitioner") is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## **PROCEDURAL HISTORY**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a judgement of the Los Angeles County Superior Court. Petitioner was convicted of first degree murder with a firearm sentence enhancement, resulting in a sentence of twenty-seven years to life. (Pet. at 2).

Petitioner does not challenge his conviction in this action; rather, Petitioner challenges the denial of his parole by the California Board of Parole Hearings (the "Board"), whom he appeared before in May 2006. (Answer at 1). Petitioner contends that the Board violated his constitutional rights when they denied him parole. (Pet. at 5).

1   Petitioner subsequently filed a petition for writ of habeas corpus with the Los Angeles

2   County Superior Court challenging the Board's denial of parole.  (*See* Answer Ex. 1).  The Los

3   Angeles County Superior Court issued a reasoned opinion rejecting Petitioner's claims on August

4   21, 2007.  (*See* Answer Ex. 2).

5   Petitioner also filed petitions for writ of habeas corpus with the California Court of Appeal

6   and the California Supreme Court.  (Answer Exs. 3, 5).  The California Court of Appeal and

7   Supreme Court issued summary denials of the petitions.  (*See* Answer Exs. 4, 6).

8   On July 17, 2008, Petitioner filed the instant federal petition for writ of habeas corpus in the

9   Central District of California.  The petition was transferred to this Court on August 5, 2008.  (Court.

10  Docs. 3, 4).

11  Respondent filed a response to the petition on January 26, 2009.  Respondent admits that

12  Petitioner has exhausted his state remedies and that the instant petition is timely.  (Answer at 3).

13  Petitioner did not file a reply to the Respondent's answer.

14  **FACTUAL BACKGROUND**

15  The facts of the commitment offense were considered by the Board in determining whether

16  Petitioner was suitable for parol and are thus relevant to the Court's inquiry into whether the State

17  court's decision upholding the Board's denial of parole was objectively unreasonable.  *See* Cal. Code

18  Regs., tit. 15, § 2402(c)(1).  The Board incorporated into the record a summary of the offense which

19  had been taken from the California Court of Appeal's decision on direct review of Petitioner's

20  conviction.  The portion, as read into the record, stated:

21  At about 1:00 a.m. on October 1, 1988, Pofirio Ochoa was awakened by the
    sound of an automobile collision.  He looked outside of the window of his studio
22  apartment and saw a cap [sic] flipped over on its roof with its tires in the air.  The car
    belonged to Erlindo Go, who is the decedent in this case.  Ochoa saw the [Petitioner]
23  chase another man down the street. [Petitioner], who is now the inmate, began firing a
    gun at the man as he chased him.  Ochoa lost sight fo the man when they turned a
24  corner.  Michael Hill, a Los Angeles Traffic Officer, heard several gunshots and
    observed two Latino men chasing a third man at the corner of Seventh and Normandy
25  at around 1.00 a.m.  A short time later Louis Shaw heard the decedent scream
    repeatedly "please leave me alone, don't hit me."  Shaw approached the scene in an
26  attempt to help the decedent.  As he did he saw that [Petitioner] and another man were
    beating the decedent, who was on the ground.  As Shaw got closer the [Petitioner] and
27  the other man continued to kick and hit the decedent, who was still lying on the
    ground.  The [Petitioner] had a gun in his hand.  As Shaw approached the [Petitioner]
28  turned and pointed the gun at Shaw and another man who had decided to help the

decedent.  Shaw ran and hid behind a trash dumpster.

About a minute later Shaw watched the defendant get into the passenger's side of a brown Datsun.  The Datsun moved at about five to seven miles an hour.  Shaw followed the car and attempted to get a license number.  The car stopped shortly thereafter and the [Petitioner] exited the vehicle and walked over to decedent, who was walking down the street.  When the decedent screamed "leave me alone" Shaw recognized his voice as the same man the [Petitioner] had been beating minutes earlier.  The [Petitioner] struck the decedent and knocked him tot he ground.  The [Petitioner] then shot the decedent and got into the Datsun and drove away.  The decedent died from a single gunshot wound to the hip.  The bullet perforated two major blood vessels before lodging in the pelvis.  The decedent had multiple head injuries, including a skull fracture, which was consistent with having been [struck] by a handgun.

Police officers arrived on the scene.  They found fun shell casings.  And almost an hour after they arrived Mr. Shaw identified the [Petitioner] as the person who fired the shot ast the decedent.  At the time the [Petitioner] was sitting nearby on the sidewalk between two other male Hispanics.  Officer Dona called to his partner "come here."  When Officer Dona looked in [Petitioner]'s direction the Officer noticed that the [Petitioner] had gotten up and was turning to walk away.  The Officer noted that the [Petitioner] glanced over his shoulder several times.  Officer Dona told his partner to get him.  As the [Petitioner] reached to grab the door to an apartment building another officer took him into custody.  Other officers asked for permission to search the [Petitioner]'s apartment.  They took him to his brother's apartment.  The officers did not discover that the defendant had taken them to the wrong department [sic] until the [Petitioner]'s brother advised them that they were in the wrong apartment.

(Pet. Ex. A, Transcript of Parole Hearing, at 11-13).

## DISCUSSION

## I.    Jurisdiction

A person in custody pursuant to the judgment of a State court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529 U.S. 362, 375 n.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution stemming from the Board's denial of parole.  Petitioner initiated this action and the denial of parole occurred when Petitioner was incarcerated at Avenal State Prison, which is located in Kings County.  (Pet. at 2).  As Kings County falls within this judicial district, 28 U.S.C. § 84(b), the Court has jurisdiction over Petitioner's application for writ of habeas corpus.  *See* 28 U.S.C. § 2241(d) (vesting concurrent jurisdiction over application for writ of habeas corpus to the district court where the petitioner is currently in custody or the district court in which a State court convicted and sentenced Petitioner if the State "contains two or more Federal judicial districts").

1    ## II.        ADEPA Standard of Review

2        All petitions for writ of habeas corpus filed after 1996 are governed by the Antiterrorism and

3    Effective Death Penalty Act of 1996 ("AEDPA"), enacted by Congress on April 24, 1996.  *Lindh v.*

4    *Murphy*, 521 U.S. 320, 326-327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert.*

5    *denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th

6    Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by Lindh*, 521 U.S. 320

7    (holding AEDPA only applicable to cases filed after statute's enactment)).  The instant petition was

8    filed in 2008 and is consequently governed by AEDPA's provisions.  *Lockyer v. Andrade*, 538 U.S.

9    63, 70 (2003).  While Petitioner does not challenge his underlying conviction, the fact that

10   Petitioner's custody arises from a State court judgment renders Title 28 U.S.C. section 2254 the

11   exclusive vehicle for Petitioner's habeas petition.  *Sass v. California Board of Prison Terms*, 461

12   F.3d 1123, 1126-1127 (9th Cir. 2006) (quoting *White v. Lambert*, 370 F.3d 1002, 1006 (9th Cir.

13   2004) in holding that § 2254 is the exclusive vehicle for a habeas petitioner in custody pursuant to a

14   State court judgment even though he is challenging the denial of his parole).

15       Under AEDPA, a petition for habeas corpus "may be granted only if [Petitioner]

16   demonstrates that the State court decision denying relief was 'contrary to, or involved an

17   unreasonable application of, clearly established federal law, as determined by the Supreme Court of

18   the United States.'" *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. §

19   2254(d)(1)); *see also Lockyer*, 538 U.S. at 70-71.  As a threshold matter, this Court must "first

20   decide what constitutes 'clearly established federal law, as determined by the Supreme Court of the

21   United States.'" *Lockyer*, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)).  In ascertaining what is

22   "clearly established federal law," this Court must look to the "holdings, as opposed to the dicta, of

23   [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* (quoting

24   *Williams*, 592 U.S. at 412).  "In other words, 'clearly established federal law' under § 2254(d)(1) is

25   the governing legal principle or principles set forth by the Supreme Court at the time the State court

26   renders its decision." *Id.*

27   \\\

28   \\\

Finally, this Court must consider whether the State court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law." *Lockyer*, 538 U.S. at 72, (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the State court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the State court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Lockyer*, 538 U.S. at 72. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the State court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant State court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the State court's application of clearly established law was "objectively unreasonable." *Id.* at 409. Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a State court decision is objectively unreasonable. *See Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003); *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999).

Petitioner bears the burden of establishing that the State court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996). AEDPA requires that a federal habeas court give considerable deference to State court's decisions. The State court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). Furthermore, a federal habeas court is bound by a State's interpretation of its own laws. *Souch v. Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

Thus, the initial step in applying AEDPA's standards is to "identify the state court decision that is appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). Where more than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last reasoned decision. *Id*. (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) for the presumption that

1   later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same

2   ground as the prior order)   The Ninth Circuit has further stated that where it is undisputed that

3   federal review is not barred by a State procedural ruling, "the question of which state court decision

4   last 'explained' the reasons for judgement is therefore relevant only for purposes of determining

5   whether the state court decision was 'contrary to' or an 'unreasonable application of' clearly

6   established federal law."  *Bailey v. Rae*, 339 F.3d 1107, 1112-1113 (9th Cir. 2003).  Thus, a federal

7   habeas court looks through ambiguous or unexplained State court decisions to the last reasoned

8   decision in order to determine whether that decision was contrary to or an unreasonable application

9   of clearly established federal law.  *Id*.

10      Here, the Los Angeles County Superior Court, the California Court of Appeal, and the

11  California Supreme Court all adjudicated Petitioner's claims.  (*See* Answer Exs. 2, 4, 6).  As the

12  California Court of Appeal and California Supreme Court issued summary denials of Petitioner's

13  claims, the Court "look[s] through" those courts' decisions to the last reasoned decision; namely, that

14  of the Los Angeles County Superior Court.[1]  *See Ylst v. Nunnemaker*, 501 U.S. at 804.

15  **III.     Review of Petitioner's Claim**

16      The dispositive inquiry before this Court is whether the last reasoned decision by the State

17  court was an unreasonable application of clearly established federal law.  *See Williams*, 529 U.S. at

18  407-408 (explaining that where there is no factually on-point Supreme Court case, the State court's

19  determination is subject to the unreasonable application clause of 28 U.S.C. § 2254).  Here,

20  Petitioner raises three grounds for relief, contending that: (1) the Board failed to apply the standard

21  set forth in California regulations, thereby violating Petitioner's right to due process of the law (Pet.

22  Attach. A at 5-6); (2) the Board's reliance on the commitment offense and the State court's reliance

23  on opposition of the district attorney violated Petitioner's due process rights (Id. at 7-8); (3) the

24  Board denied Petitioner due process of the law by failing "to apply the matrix in lieu of Petitioner's

25  exemplary prison record and no evidence supporting a finding of unsuitability."  (Id. at 9-10).

26  _____

27      [1]In denying Petitioner's application for relief, the California Court of Appeal wrote that "[t]he petition is denied.
    There is some evidence to support the decision of the Board of Parole Hearings.  (*In re Rosenkrantz* (2002) 29 Cal.4th 616,
28  667)."  As the appellate court's decision fails to explain or address what constitutes the some evidence, the Courts looks
    through the decision.

1          **A.     Legal Standard for Denial of Parole**

2          "We analyze a due process claim in two steps.  '[T]he first asks whether there exist a liberty

3   or property interest which has been interfered with by the State; the second examines whether the

4   procedures attendant upon that deprivation were constitutionally sufficient.'" *Sass*, 461 F.3d at 1127.

5   The United States Constitution does not, by itself, create a protected liberty interest in a parole date.

6   *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981).

7          In briefs submitted to the Court, Respondent argues that Petitioner does not have a liberty

8   interest in parole despite recognizing the existence of Ninth Circuit authority to the contrary.

9   (Answer at 3-4).  The Ninth Circuit has consistently held that California prisoners whose sentence

10   provide for the possibility of parole possess a liberty interest in receiving a parole release date, "a

11   liberty interest that is protected by the procedural safeguards of the Due Process Clause." *Irons*, 505

12   F.3d at 850; *see also McQuillion v. Duncan*, 306 F.3d 895, 901 (9th Cir. 2002) (quoting *Greenholtz

13   v. Inmates of Nebraska Penal*, 442 U.S. 1, 12 (1979) in holding that California's parole scheme gives

14   rise to a cognizable liberty interest in release on parole); *Biggs v. Terhune*, 334 F.3d 910, 914 (9th

15   Cir. 2003).[2]   The Court finds the reasoning by the Circuit persuasive on this point and thus finds that

16   Petitioner has a protected liberty interest in a parole date.

17          A finding that a liberty interest exists does not end the Court's inquiry as the Due Process

18   Clause is not violated where the denial of a petitioner's liberty interests follows the State's

19   observance of certain procedural safeguards.  *See Greenholtz*, 442 U.S. at 12.  Respondent contends

20   that due process merely entitles Petitioner the right to be heard, advance notice of the hearing, and

21   for the Board to state their reasons for denial.  (Answer at 3).  This contention is based on the

22   argument that the "some evidence" standard does not constitute clearly established federal law and is

23

24          [2]While some have argued that the Ninth Circuit's line of cases finding a liberty interest existed from the mandatory language of the statute has been curtailed by the United States Supreme Court's decision in *Sandin v. Conner*, 515 U.S. 472 (1995), the Court notes that the *Sandin* test would lead to the same conclusion.  More importantly, the Ninth Circuit has "since held that *Sandin*'s holding was limited to 'the separate but related question of when due process liberty interests are created by internal prison regulations.' [citation] Accordingly, we continue to apply the 'mandatory language' rule set forth in *Greenholtz* and *Allen* in order to determine whether [the state's] statutory scheme creates a liberty interest in early release into community custody." *Carver v. Lehman*, 558 F.3d 869, 873 n. 5 (9th Cir. 2009) (citing *McQuillion*, 306 F.3d at 902-03 and *Sass*, 461 F.3d at 1127 n. 3 in applying mandatory language rule to find no liberty interest for early release into community under Washington statute).

1   not applicable to parole denials.  (*Id*. at 5).  Respondent is correct in one respect; a parole release

2   determination is not subject to all of the due process protections of an adversarial proceeding.  *See*

3   *Pedro v. Oregon Parole Board*, 825 F.2d 1396, 1398-99 (9th Cir. 1987).  "[S]ince the setting of a

4   minimum term is not part of a criminal prosecution, the full panoply of rights due a Petitioner in

5   such a proceeding is not constitutionally mandated, even when a protected liberty interest exists."  *Id*.

6   at 1399; *Jancsek v. Oregon Bd. of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987).  Thus, an inmate is

7   entitled to receive advance written notice of a hearing, be afforded an "opportunity to be heard" and

8   told why "he[/she] falls short of qualifying for parole."  *Greenholtz*, 442 U.S. at 16; *see also Pedro*,

9   825 F.2d at 1399. Here, the Court notes that Petitioner does not allege that she was deprived of any

10   of these procedural safeguards.

11      The Ninth Circuit has consistently recognized that a prisoner's due process rights are

12   implicated where there is no evidence to support the denial of parole.  *Irons*, 505 F.3d at 851; *see*

13   *also Sass*, 461 F.3d at 1128-1129.  "In *Superintendent, Mass. Correc. Inst. v. Hill* [472 U.S. 445

14   (1985)] the Supreme Court held that 'revocation of good time does not comport with 'the minimum

15   requirements of procedural due process' unless the findings of the prison disciplinary board are

16   supported by some evidence in the record.'"  *Sass*, 461 F.3d at 1128 (citations omitted).  The Ninth

17   Circuit has further held that the same standard of "some evidence" that applies to the revocation of

18   good time also extends to parole determinations and that this same standard of judicial review

19   applies to habeas petitions regarding parole denials.  *Irons*, 505 F.3d at 851; *Sass*, 461 F.3d at 1128-

20   1129.  This evidentiary standard prevents arbitrary deprivations of the prisoner's liberty interest

21   without imposing undue administrative burdens or threatening institutional interests.  *Hill*, 472 U.S.

22   at 455.  Thus, the Court finds that the "some evidence" standard is applicable to Petitioner's denial

23   of parole.

24      The inquiry of "whether a state parole board's suitability determination was supported by

25   'some evidence'" is framed by the California statutes and regulations governing parole suitability.

26   *Irons*, 505 F.3d at 851; *see Briggs*, 334 F.3d at 915.  California law provides that after an eligible life

27   prisoner has served the minimum term of confinement required by statute, the Board "shall set a

28   release date unless it determines that the gravity of the current convicted offense or offenses, or the

timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for" the prisoner.  Cal. Penal Code § 3041(b).  "[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison," the prisoner must be found unsuitable and denied parole.  Cal. Code Regs., tit. 15, § 2402(a); *see In re Dannenberg*, 34 Cal.4th at 1078, 1080.  The Board decides whether a prisoner is too dangerous to be suitable for parole by applying factors set forth in the California Code of Regulations.  *See* Cal. Code Regs., tit. 15, § 2402; *Irons*, 505 F.3d at 851-852; *Biggs*, 334 F.3d at 915-916.  The regulations permit consideration of "all relevant, reliable information available to the panel," and explicitly calls for consideration of "the base and other commitment offenses, including behavior before, during and after the crime."  Cal. Code Regs., tit. 15, § 2402(b).  Factors supporting a finding of unsuitability for parole include: the underlying offense was carried out in an "especially heinous, atrocious or cruel manner"; a record, prior to incarceration for the underlying offense, of violence; a history of unstable relationships with others; and serious misconduct while incarcerated.  Cal. Code Regs., tit. 15, § 2402 (c); *see also In re Shaputis*, 44 Cal.4th 1241, 1257 n. 14 (Cal. 2008).

### B.    State Court Decision

After reviewing the record, the Court does not find that the Los Angles County Superior Court unreasonably applied the "some evidence" standard.  *See* 28 U.S.C. § 2254(d)(1).  The Superior Court concluded that there was some evidence to support the Board's finding that Petitioner "presents an unreasonable risk of danger to society."  (Pet. Ex. B at 1).  The Superior Court's conclusion rested primarily on the manner in which the crime had been committed–noting that the record demonstrated the commitment offense has been carried out with callous disregard for human suffering as the victim had been chased and severely beaten before being shot.  (Id).

In support of his contention that "any reliance on the commitment offense violates Due Process" as California regulations mandate that a date be set at the initial hearing, Petitioner cites *Biggs*, 334 F.3d at 915.  Petitioner's reliance on *Biggs* is misplaced as the Ninth Circuit in *Biggs*, 334 F.3d at 916, found that there was some evidence pursuant to California regulations in the form of the manner and gravity of the commitment offense.  More importantly, the Ninth Circuit noted in *Biggs*

1   that, "continued reliance in the future on an unchanging factor, the circumstance of the offense and

2   conduct prior to imprisonment,...*could* result in a due process violation." *Id*. at 917 (emphasis

3   added).   The Court recognizes that the California Supreme Court has held that even where the

4   commitment offense was particularly egregious, reliance on this immutable factor *may* violate a

5   petitioner's due process rights.  *In re Lawrence*, 44 Cal.4th 1181, 1191 (Cal. 2008).  In *Lawrence*,

6   the California Supreme Court found that the intervening twenty-four years in which petitioner, now

7   age sixty-one, had demonstrated, "extraordinary rehabilitative efforts specifically tailored to address

8   the circumstances that led to her criminality, her insight into her past criminal behavior, her

9   expressions of remorse, her realistic parole plans, the support of her family, and numerous

10  institutional reports justifying parole" rendered "the unchanging factor of the gravity of petitioner's

11  commitment offense" no longer probative of "her current threat to public safety, and thus provides

12  no support for the Governor's conclusion that petitioner is unsuitable for parole at the present time."

13  *Id*. at 1226.

14          However, Petitioner's case is materially distinguishable from *Lawrence*.  While Petitioner's

15  denial of parole stems from immutable factors similar to *Lawrence*, the *Lawrence* court had been

16  confronted with a denial of parole stemming from a thirty-six year old commitment offense.  Here,

17  Petitioner was received into custody of the California Department of Corrections on May 16, 1989.

18  (Pet. Ex. B at 1).  The Court assumes that Petitioner was incarcerated and receives credit for the

19  entire period spanning from October 2, 1988, when he was arrested; thus, Petitioner would have

20  served his minimum sentence of twenty-seven years on October 2, 2015.  Unlike in *Lawrence*,

21  Petitioner was denied parole in 2006, at which time he had only served eighteen years of his

22  twenty-seven year minimum sentence.  The Ninth Circuit has found that a parole board's sole

23  reliance on the commitment offense comports with the requirements of due process where the

24  board's determination of unsuitability came prior to the prisoner serving the minimum number of

25  years required by his sentence.  *Irons*, 505 F.3d at 853.  The *Irons* court specifically stated that:

26          We note that in all the cases in which we have held that a parole board's decision to
            deem a prisoner unsuitable for parole solely on the basis of his commitment offense
27          comports with due process, *the decision was made beore the inmate had served the
            minimum number of years required by his sentence*...All we held in those cases and
28          all we hold today, therefore, is that, given the particular circumstances of the offenses

*in these cases, due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms.*

*Id.* (emphasis added). *Irons* suggests that the Board's reliance on immutable factors, such as the commitment offense would not implicate Petitioner's due process rights. *See id.* at 853-854; *Sass*, 469 F.3d at 1129. Arguably, the "rational nexus" between the commitment offense relied upon by the Board and current dangerousness that is required to meet the some evidence, *Lawrence*, 44 Cal.4th at 1210, 1213, 1227, is not as attenuated where the petitioner has yet to serve his full sentence. Thus, the Board's reliance on the commitment offense here does not constitute a violation of Petitioner's due process rights as their denial came before Petitioner served the minimum number of years required by his sentence. *See Paddock v. Mendoza-Powers*, __F.Supp.2d__, No. SACV 07-1247-JVS (RC), 2009 WL 4730595 *6 (C.D. Cal. Dec. 2, 2009) (citing *Irons* and *Sass* for the proposition that, "[e]ven if this were the only evidence the Board had supporting its determination to deny petitioner parole, petitioner would not have been deprived of due process of the law by the Board because petitioner 'had not served the minimum number of years to which [he] had been sentenced at the time of the challenged parole denial by the Board'").

Furthermore, as noted by the *Lawrence* court, a discipline-free record while incarcerated does not automatically render the commitment offense unpredictive of current dangerousness. *Id.* (citing *Lawrence*'s companion case, *In re Shaputis*, 44 Cal.4th 1241, 1259-1260 (Cal. 2008), in concluding that lack of insight into the commitment offense rendered aggravating factor of the crime probative of petitioner's current dangerousness such that Governor's reversal of parole was neither arbitrary or capricious despite an inmate's discipline-free record during incarceration). In its decision the Board expressed concern about the lack of insight into factors for the commitment offense. This concern is supported by the psychological evaluation which noted:

> The index offense presents as a crime of affective violence, and was committed across two separate incidences of physical conflict and aggression. The inmate had no history of violent behavior, nor any criminal behaviors, prior to the instant offense. The motivation for the offense is still unclear, owing in part, to the inmate's denial of involvement in the crime. Given his conviction by a jury, the inmate must be viewed as not taking responsibility for his behavior, as focusing blame onto others, and thus being unlikely to make any major changes to his lifestyle. That is, since he is a victim of an unjust system, it is thus he who has been wronged.

(Pet. Ex. D at 8).

1     Noting that the "some evidence standard is minimal, and assures that 'the record is not so

2  devoid of evidence that the findings of the disciplinary board were without support or otherwise

3  arbitrary,'" the Court finds that the State court did not unreasonably apply this standard as the

4  commitment offense and Petitioner's lack of insight into the crime meet that minimal standard.  *See*

5  *Sass*, 461 F.3d at 1129 (quoting *Hill*, 472 U.S. at 457).

6         ***C.     Matrix of Base Terms***

7     Petitioner also contends that the Board's failure to apply a matrix of base terms in light of

8  Petitioner's exemplary record violates his due process rights.  Title 15 of California Code of

9  Regulation section 2403(c), requires the Board set a base term pursuant to a matrix of base terms.

10  However,  Petitioner's claim does not state a grounds for relief as California's regulations clearly

11  establish that the setting of a base term under 2403(c) occurs *after* the initial determination that

12  Petitioner is suitable for parole.  *See Murphy v. Expinoza*, 401 F.supp.2d 1048, 1054 (C.D. Cal.

13  2005) (citing *In re Danneberg*, 34 Cal.4th 1061, 1078 (Cal. 2005) and Cal. Code Regs., tit. 15, §

14  2403(a) in stating, "absent a determination of parole suitability by the BPT, there is no 'base term'

15  [citation]. Thus, petitioner's ongoing detention does not deprive petitioner of due process of law").

16  Consequently, Petitioner has no due process right to the application of the matrix term prior to a

17  finding that he is suitable for parole and cannot obtain habeas corpus relief on this ground.

18                         **RECOMMENDATION**

19     Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be

20  DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for

21  Respondent.

22     This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United

23  States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304

24  of the Local Rules of Practice for the United States District Court, Eastern District of California.

25  Within thirty (30) days after being served with a copy, any party may file written objections with the

26  court and serve a copy on all parties.  Such a document should be captioned "Objections to

27  Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and

28  filed within ten (10) *court* days (plus three days if served by mail) after service of the objections.

1   The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).  The

2   parties are advised that failure to file objections within the specified time may waive the right to

3   appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

4

5   IT IS SO ORDERED.

6   **Dated:     December 22, 2009                   /s/ John M. Dixon**
                                                UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28